# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00218-CR

German Rodriguez, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 10-1136-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found German Rodriguez guilty of driving while intoxicated, third offense, and the trial court sentenced him to sixty years' imprisonment. *See* Tex. Penal Code §§ 12.42(d)(1), 49.04, 49.09(b). Evidence at trial showed that Rodriguez caused a collision when his truck made an unprotected left turn from Parmer Lane onto Dallas Drive and in front of Charles Pawluck's car, which was traveling straight through a green signal light at the intersection of Parmer Lane and Dallas Drive. Testing revealed that Rodriguez had a blood alcohol concentration of more than double the legal limit.

Rodriguez's court-appointed attorney filed a motion to withdraw supported by a brief concluding that this appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 744 (1967), by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See id.*; *see also Penson v. Ohio*, 488 U.S. 75, 80 (1988); *High v. State*, 573 S.W.2d 807, 811-13 (Tex. Crim. App. 1978);

*Currie v. State*, 516 S.W.2d 684, 684 (Tex. Crim. App. 1974); *Jackson v. State*, 485 S.W.2d 553, 553 (Tex. Crim. App. 1972); *Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). Rodriguez received a copy of counsel's brief and was advised of his right to examine the appellate record and to file a pro se brief. *See Anders*, 386 U.S. at 744. Rodriguez filed a pro se brief, arguing that there was insufficient evidence supporting his conviction and the three prior DWIs that were alleged in the indictment. He also contends that the trial court erred by denying his motions to suppress, by using his felony DWI conviction to both enhance his current DWI offense to the level of a third-degree felony and to enhance his punishment, and by considering an extraneous offense during punishment. We will briefly explain why Rodriguez's contentions lack arguable merit. *See Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009); *Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

**Legal sufficiency**

A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place, and the offense is a third-degree felony if the person commits DWI and has had two prior DWI convictions. Tex. Penal Code §§ 49.04, .09(b)(2). "Intoxicated" means not having the normal use of mental or physical faculties because of the introduction of alcohol or any other substance into the body, or having an alcohol concentration of 0.08 or more. *Id*. § 49.01(2).

The evidence at Rodriguez's DWI trial included testimony from the other driver involved in the collision, officers with the Williamson County Sheriff's Office, a Williamson County Emergency Medical Services paramedic, a Texas Department of Public Safety forensic scientist, and a Williamson County Sheriff's Office crime scene specialist. Charles Pawluk, who was driving the car that Rodriguez's truck hit, identified Rodriguez as the driver of the truck at the scene

and in court. Pawluck testified that no one except Rodriguez exited from the truck and after doing so, Rodriguez walked over to Pawluck and asked if he "wanted to forget about it." Officer Brian Etzkorn, who responded to the scene of the collision, testified that Rodriguez indicated he was turning from Parmer onto Dallas before the collision. Officer Etzkorn noted a strong odor of alcohol emanating from Rodriguez and from Rodriguez's vehicle, along with Rodriguez's bloodshot eyes, and his unsteadiness while standing, but Rodriguez denied he had been drinking. Officer Etzkorn also heard a police radio dispatch stating that Rodriguez had at least two prior DWI convictions. Before going off-duty, Officer Etzkorn shared the information he obtained about Rodriguez with Officer Anthony Lovato, who was at the scene of the collision and subsequently met with Rodriguez at the hospital. While at the scene, Officer Lovato detected a strong odor of alcohol inside Rodriguez's truck and heard the dispatch report about Rodriguez's prior DWI convictions.

Rodriguez was evaluated at the scene by EMS paramedic Donna Tisdell, who testified that Rodriguez exhibited slurred speech, admitted he had been drinking, and was "very intoxicated." Tisdell stated that she transported Rodriguez to the Round Rock Medical Center emergency room and it was her regular practice to speak with officers that she saw at the hospital. After giving a report at the ER and returning to the ambulance, Tisdell noticed that it still smelled of alcohol.

At the hospital, Officer Lovato noted Rodriguez had a moderate smell of alcohol on his breath. After Rodriguez denied that there was anything wrong with him physically, and after a nurse confirmed that Rodriguez did not have head trauma that would interfere with a HGN test, Officer Lovato administered an HGN test to Rodriguez, which he failed. Officer Lovato then arrested Rodriguez, gave him a statutory warning about the blood draw, and began the process of obtaining a blood draw from Rodriguez. *See* Tex. Transp. Code §§ 724.012(b)(3), .015.

3

DPS forensic scientist Renee Hawkins testified that a test of a blood sample drawn at Officer Lovato's request two hours after the collision showed Rodriguez had a blood alcohol concentration (BAC) of .25, which for a 160-pound man was the equivalent of almost nine beers. A routine hospital test of Rodriguez's blood serum, which Hawkins described as having more water than the test of whole-blood performed by DPS, revealed Rodriguez had a BAC of .22. Hawkins opined that Rodriguez's BAC exceeded the legal limit of .08 at the time of the collision.

DPS crime scene specialist Carlos Cardona testified without objection about the fingerprint analysis he performed using an inked set collected from Rodriguez at trial and using it to conclude that thumbprints shown on the judgments of prior DWI convictions in Harris County in 1994 and 1995 belonged to Rodriguez.[1] Cardona also testified without objection about a judgment on a third prior DWI conviction in Harris County in 1983, which did not have a fingerprint but had Rodriguez's name, correct date of birth, and was listed as one of two DWI convictions on Rodriguez's DPS driving record.[2] Cardona further confirmed that Rodriguez occasionally used an alias, testifying without objection that a thumbprint on a redacted judgment of conviction in 1996 for "German Rodriguez aka Alex Garcia," was Rodriguez's thumbprint.

Viewing the entirety of the evidence in this record in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the DWI third offense

---

[1] The 1995 judgment identified the defendant as "Alex Garcia," Rodriguez's occasionally used alias. This alias also appears on a 1996 redacted judgment with a thumbprint that the State introduced at trial for the limited purpose of showing that "Alex Garcia" is Rodriguez. *See Rodriguez v. State*, No. 14-96-00366-CR, 1999 WL 274663 (Tex. App.—Houston [14th Dist.] May 6, 1999, pet. ref'd) (mem. op., not designated for publication).

[2] Rodriguez's DPS driving record reflected his 1983 and 1994 DWI convictions but not the 1995 DWI conviction under his "Alex Garcia" alias.

beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Because the evidence at trial was sufficient to sustain Rodriguez's conviction and because his argument fails to view the evidence in the light most favorable to the verdict, this issue lacks arguable merit.

**Motions to suppress**

Rodriguez's trial counsel and Rodriguez's initial attorney filed two separate motions to suppress, the first seeking suppression of all evidence based on lack of probable cause to arrest and the second seeking suppression of Rodriguez's horizontal gaze nystagmus (HGN) test results. At the suppression hearing, Rodriguez's trial counsel argued a lack of probable cause to arrest Rodriguez and asked only that "the arrest be suppressed." The trial court ruled the arrest was valid. But the trial court did not rule on suppression of the HGN test results, and counsel did not pursue a suppression ruling or object to the lack of one. In any event, the court found that "even without the HGN test, the undisputed evidence establishes probable cause," and our review of the record supports this finding. Although Rodriguez was not arrested until after he failed the HGN test, the totality of the information known to Officer Lovato—including the alcoholic odor in Rodriguez's truck, Rodriguez's bloodshot eyes, his unsteadiness while standing, his alcoholic odor, and his poor driving causing the collision—provided probable cause for Rodriguez's DWI arrest independent of his HGN test failure. Accordingly, this issue lacks arguable merit.

**Admission and use of 1996 felony DWI conviction**

Rodriguez further argues that the trial court erred by admitting and using his 1996 felony DWI conviction for dual purposes—to enhance the present DWI to the level of a third-

5

degree felony and then again to enhance his punishment as a habitual felony offender. *See* Tex. Penal Code §§ 12.42(d) (permitting enhancement of punishment for defendant being tried for felony who is shown to have had two prior felony convictions, and second one is for offense that occurred after first one became final), 49.09(b) (permitting enhancement of DWI offense). However, the record disproves this argument. During the guilt/innocence phase of trial, the State referenced the redacted 1996 judgment for the limited purpose of showing that "Alex Garcia" was Rodriguez's alias. *See Rodriguez v. State*, No. 14-96-00366-CR, 1999 WL 274663 (Tex. App.—Houston [14th Dist.] May 6, 1999, pet. ref'd) (mem. op., not designated for publication) (reflecting defendant's name as "German Rodriguez aka Alex Garcia."). The jury was not informed about the offense made the basis of the 1996 conviction, nor did the State use this 1996 conviction as proof of Rodriguez's three prior DWI convictions in Harris County (relying instead on his DWI convictions from 1983, 1994, and 1995). The 1996 felony DWI conviction was properly admitted and used by the trial court during the punishment phase to establish that Rodriguez was a habitual offender. *See* Tex. Penal Code § 12.42(d). As such, this contention lacks arguable merit.

**Admission and consideration of 1986 extraneous offense**

Finally, Rodriguez argues that the trial court erred during the punishment phase by admitting and considering a 1986 aggravated assault judgment without evidence that Rodriguez was the same person (because the aggravated assault judgment does not include a thumbprint). Here again, the record disproves Rodriguez's argument. Rodriguez's 1986 aggravated assault conviction is referenced as a prior offense in Rodriguez's 1995 felony DWI indictment (the charging instrument for his 1996 felony DWI conviction). Rodriguez does not dispute that he is the defendant referenced in the 1995 felony DWI indictment. That 1995 felony DWI indictment links Rodriguez to the

6

aggravated assault judgment by correctly referencing the same name ("German Rodriguez"), date of birth, cause number, and date of conviction that appear on the1986 aggravated assault indictment. Because the trial court had evidence that Rodriguez was the same person who committed the 1986 aggravated assault, Rodriguez's contention otherwise lacks arguable merit.

Having reviewed the record and all filed briefs, we find no reversible error. *See Garner*, 300 S.W.3d at 766; *Bledsoe*, 178 S.W.3d at 826-27. We agree with appointed counsel that this appeal is frivolous and grant his motion to withdraw.

The judgment of conviction is affirmed.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   August 14, 2013

Do Not Publish

7